**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| SHAWNEE MISSION UNITARIAN UNIVERSALIST CHURCH, a Kansas Not for Profit Organization, ) ) ) ) | |
| Plaintiff, ) ) | Case No. 19-cv-2719 |
| vs. ) ) | JURY TRIAL DEMANDED |
| THE CITY OF LENEXA, KANSAS, a Kansas Municipal Organization, ) ) ) | |
| Defendant. ) | |

*Plaintiff's Verified Complaint for Declaratory Relief,*
*Injunctive Relief and Damages*
*and Jury Demand*

Plaintiff, *Shawnee Mission Unitarian Universalist Church,* by and through its counsel, states the following as its Complaint against Defendant, City of Lenexa, Kansas, under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc *et seq.* ("RLUIPA"); the Kansas Preservation of Religious Freedom Act ("KPRFA"), Kan. Stat. Ann. § 60-5303(a); the First Amendment, Free Exercise, Assembly and Free Speech clauses of the United States Constitution; and the rights granted in Kan. Const. Bill of Rights § 7:

**Parties**

1.     Plaintiff Shawnee Mission Unitarian Universalist Church is a Church and Kansas nonprofit corporation organized under the laws of the State of Kansas, with its principal place of business located and maintained at 9400 Pflumm Road in the City of Lenexa, the County of Johnson and the State of Kansas.

2.      Defendant City of Lenexa, Kansas is a political subdivision located in Johnson County, Kansas and chartered by Kansas law, which, for purposes of RLUIPA and the Kansas Preservation of Religious Freedom Act, constitutes a "government."   42 U.S.C. § 2000cc-5(4)(A)(i)-(ii); Kan. Stat. Ann. § 60-5303(a).

**Jurisdiction, Request for Advancement on the Court's Calendar, and Venue**

3.      This Court has original subject matter jurisdiction over this case under

    a.   42 U.S.C. § 2000cc-2(f) and 28 U.S.C. § 1331, as this action arises under the United States Constitution and the laws of the United States;

    b.   28 U.S.C. § 1343(a)(3), as this case is brought to redress deprivations under color of state law, of rights, privileges and immunities secured by the United States Constitution;

    c.   28 U.S.C. § 1343(a)(4), as this case seeks to recover equitable relief under acts of Congress, specifically 42 USC § 1983 and 42 U.S.C. § 2000cc, which provide causes of actions for the protection of civil and constitutional rights and injunctive remedies;

    d.   28 U.S.C. § 2201(a), as this case seeks declaratory relief under 28 U.S.C. § 2202;

    e.   42 U.S.C. § 1988, to secure reasonable attorney fees as part of the case; and

    f.   supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the state law claims asserted herein, as they form part of the same case or controversy as the federal questions.

4.      Plaintiff includes a request for a speedy decision and advancement on this Court's calendar under Fed. R. Civ. P. 57 and 28 U.S.C. § 2201.

5.      The venue in this action is proper within the District of Kansas pursuant to 28 U.S.C. § 1391(b), in that Defendant is situated within this judicial district, Plaintiff is located within this judicial district, all of the events giving rise to the claims asserted by Plaintiff occurred in this judicial district, and the property that is the subject of the action is situated in this judicial district.

6.     This Court has personal jurisdiction over Defendant as a City and Municipal Corporation in the State of Kansas.

## Factual Allegations

### *Shawnee Mission Unitarian Universalist Church*

7.     Shawnee Mission Unitarian Universalist Church (hereinafter "SMUUCh" or "Church") is a religious community of people engaged in worship and the celebration of life, personal and intellectual growth, caring and supportive fellowship, humanitarian service and social action.

8.     The Church is registered as a nonprofit corporation with the state of Kansas and possesses federal tax-exempt status pursuant to IRS Code Section 501(c)(3).

9.     SMUUCh was incorporated in 1967 as Shawnee Mission Unitarian Society.

10.     SMUUCh is a sovereign member of the Unitarian Universalist Association (UUA) denomination.

11.     Charity and service to those in need are integral parts of the Unitarian Universalist denomination.  The UUA social mission is based on biblical principles, such as, *"When you reap the harvest of your land, moreover, you shall not reap to the very corners of your field nor gather the gleaning of your harvest; you are to leave them for the needy and the alien,"* Leviticus 23:22 and, *"Vindicate the weak and fatherless; Do justice to the afflicted and destitute. Rescue the weak and needy; Deliver them out of the hand of the wicked*." Psalm 82:3-4 (N. Am. St. Bible).

12.     Continuously since 1967, SMUUCh has been a vibrant place of worship, growth and service to the beloved community in the region. Church members believe that Jesus' ministry was, most powerfully, a ministry to the poor.  Church members believe that Jesus' actions clearly call them to their most generous selves and that they are to live lives of service, as he did.  They

3

participate in these mission and outreach ministries actively, including serving Johnson County homeless residents and working with Project 10/20 to minister to the homeless in the local area.

13.     Today, SMUUCh's congregation consists of approximately 317 members and about 200 additional friends and regular visitors.

14.     SMUUCh offers a variety of opportunities for its members to worship and grow together, including:

      a.  Sunday morning worship service;

      b.  Adult religious education program;

      c.  Youth ministry and religious education programs;

      d.  A children's ministry and religious education;

      e.  Outreach opportunities and ministry to those in need;

      f.  Conferences and seminars; and

      g.  Local and national denominational work and advocacy.

15.     SMUUCh perceives its physical location to be a gift that has allowed the congregation to accomplish their sacred mission to create their beloved community; that is, to build a company of people to act as Jesus would; to serve and shelter the people who are homeless.

16.     SMUUCh seeks to act as a moral force in the world and believes that ethical living is the supreme witness of religion.  The principles and purpose of Unitarian Universalism are as follows:

      a.  The inherent worth and dignity of every person;

      b.  Justice, equality and compassion in human relationships;

      c.  Acceptance of one another and encouragement to spiritual growth in our congregation;

      d.  A free and responsible search for truth and meaning;

4

e.  The right of conscience and the use of the democratic process within our congregation and society at large;

f.  The goal of world community with peace, liberty and justice for all; and

g.  Respect for the interdependent web of all existence of which we are part.

17.  The principles and purpose of SMUUCh are best expressed in the opening words of its worship services:

> Love is the doctrine of this church,
> The quest of truth is its sacrament,
> And service is its prayer.
> To dwell together in peace,
> To seek knowledge in freedom,
> To serve humanity in fellowship,
> To the end that all souls shall grow into harmony with the Divine-
> Thus do we covenant with one other.

18.  The Unitarian Universalist Association's General Resolution concerning Housing for the Homeless, of which SMUUCh adheres to, states as follows:

Recognizing the inherent worth and dignity of every human being, we as Unitarian Universalists hold that access to affordable, habitable housing is a fundamental right in a just society.

WHEREAS, hundreds of thousands of people are homeless and living in the streets; and

* * *

THEREFORE BE IT RESOLVED: That the Unitarian Universalist Association affirms access to affordable, habitable housing as a just and achievable goal and calls upon its member societies:

- To work to establish, strengthen, and fund programs to assist low-income individuals, families, and the homeless on local, state, provincial, and national levels;
- To identify and support cooperative community efforts that offer creative approaches in developing housing for the impoverished in economically integrated settings;
- To encourage the provision of appropriate community-based housing for disabled and chronically mentally ill persons;

- To work to provide not only long-term housing but also transitional housing with social services for families and individuals, as well as emergency short-term shelter that will assure safety, privacy, and dignity for persons in need;
- To explore and support preventive approaches to the problems of homelessness among families, the de-institutionalized, the unemployed, the disabled, the elderly, runaways, and victims of abuse; and
- To advocate legislation and funding at national, provincial, state, and local levels which will alleviate the immediate misery of homelessness and stem the tide of homelessness by addressing the permanent housing needs of low-income individuals and families.

19.     The commitment to serve the homeless is an essential part of many other Unitarian Universalist Churches throughout the United States, including:

a.   Kansas City, Missouri:  http://allsoulskc.org/all-posts/news/warming-center-in-the-news-march-3rd-2019/attachment/warming-center-in-the-new/

b.   Columbia, Missouri: https://www.columbiamissourian.com/news/local/room-at-the-inn-to-open-at-unitarian-universalist-on/article_6ad23c34-fa4a-11e8-ad70-2beba60c7c5a.html;

c.   Portland, Oregon: https://www.firstunitarianportland.org/shelter/

d.   Huntington, New York: https://www.uufh.org/faith-in-action/hihi/

e.   Walnut Creek, California: https://www.mduuc.org/work-for-justice/winternights/

f.   Blacksburg, Virginia. https://uucnrv.org/justice/social-action/

g.   Boston, Massachusetts: https://www.uua.org/connect/stories/cambridge-church-will-host-shelter-homeless-youth

20.     In 2010, when it became obvious to the members of SMUUCh that it was outgrowing its old building, SMUUCh began the discussion of where it wanted its congregation to be physically located and what would its new building need to help with its spiritual growth.

21.     The members made the social-conscience decision to use an existing building rather than build a new one. Therefore, it purchased a closed elementary school in 2011 and remodeled

it for space to grow and to allow room to organize and implement social justice actions, such as sheltering the homeless.

22.     The subject property, formally an elementary school, is located in the "Sunny Side" neighborhood at 9400 Pflumm Road, Lenexa, Kansas ("Property") in the City of Lenexa ("City") and is zoned Residential Single Family.  A map of the Property is attached as ***Exhibit 1*** and is reproduced in slightly smaller form here:



23.     While the Property is zoned Residential, it is located adjacent to commercial and office uses. As shown in ***Exhibit 1*** and in the Google Map above,

    a.  To the South of the Church building is a large field which is home to the church's Community Garden and Giving Grove which sit adjacent to Crown Lift Trucks and offices for Catapult International, Barber Financial and American Family Insurance;

    b.  To the East of the Church is the Lenexa Masonic Lodge 135; Lenexa Community Center; Lenexa Senior Center, Alterations by Heidi, Carter's Antiques, Autism from the Start *(all in former residential homes)* and the Cat Clinic of Johnson County;

    c.  To the North of the Church is a rail line, Jerry's Bait Shop, and Lenexa Smoke store;

    d.  To the Western border of the Church property is a dual train line, and Santa Fe Trail Drive.

24.     In addition to weekly religious services, SMUUCh uses the property for weekly sacred text study and social group meetings, and allows outside groups – such as the Scouts BSA, Recovery Groups, Kansas City Japanese School and other groups – to use its many classrooms for community events and affairs.  All of the uses are accessory to and part of the religious mission of the Church.

### *Homeless in the City of Lenexa*

25.     The City of Lenexa adopted a zoning code which governs land use and zoning within the City but provides no zoning district where homeless shelters are either approved or conditionally approved uses. See, ***Exhibit 2***, generally Lenexa Zoning Code.

26.     Lenexa City Manager Beccy Yocham has confirmed that there is no zoning district that allows for homeless shelters in Lenexa, Kansas, and yet has recognized that there is a need for homeless shelters in Lenexa, Kansas, stating *"I absolutely know that there is a need,"* for a homeless shelter. ***Exhibit 3,*** Flatland Kansas City News, October 28, 2019.

8

27.     At the present time, there are no homeless shelters for single male adults in Johnson County.  There is one shelter with four (4) beds for homeless single adult women.  The official homeless count in Johnson County, conducted in January, was 189 people. *Exhibit 3,* Flatland Kansas City News, October 28, 2019.

28.     There has been a 13% increase in homeless in the county over the past year; the median age of the homeless is 32 (up from 15 years old in 2015) and about 80% of those counted were in adult-only households. *Id.*

29.     Last winter, between Dec. 1 and April 1, there were 240 homeless individuals in Johnson County served by a temporary housing group called Project 10/20. *Id.*

30.     Senior Pastor Rose Schwab of SMUUCh is aware of an increase of people asking the Church for help as they are either homeless or home insecure (meaning, will be homeless soon) and has personally been asked by people who live in Johnson County for financial, grocery, medical and housing support.

### The City of Lenexa illegally uses its Zoning Code
### to close the door to Churches that seek to serve the homeless

31.     The City of Lenexa adopted a zoning code which governs land use and zoning within the City. See, *Exhibit 2*, generally Lenexa Zoning Code.

32.     The Lenexa Zoning Code contains three (3) zoning classifications (Residential, Nonresidential and Special Purpose) with a combined twenty two (22) zoning districts. *Exhibit 2*, p. 5.

33.     The Lenexa Zoning Code provides, in section 4-1-B-6 and RP-1, that the following uses are permitted in the Zoning District in which the Property is located:

a. *Residential Uses:* Single Family homes, Manufactured Homes

b. *Public or Civic Uses:*

9

    i.  ***Churches or places of worship***, subject to the supplementary use regulations of Section 4-1-b-23-R of the Code;

    ii.  ***Day care,*** limited, subject to the Code; supplementary use regulations of Section 4-1-b-23-E of the Code, Group Home, limited.

    iii.  ***Public Park,*** subject to the supplementary use regulations of Section 4-1-b-23-X of the Code.

***SMUUCh's Meetings with the City:***
***Approved by the professionals, then Rejected by the City Manager***

34.    On October 8, 2019, Matthew Clark, SMUUCh member, Project 10/20 Volunteer and employee of Johnson County Mental Health, met with the Board of Directors of SMUUCh and asked if the Church would be willing to partner with Project 10/20, a nonprofit group which provides temporary housing to the homeless, for the winter of 2019-2020 to house up to forty homeless individuals overnight during the winter months.

35.    The SMUUCh Board of Directors adopted Project 10/20's policy and procedure manual[1] for providing service to the homeless and safety to the local community that included the following:

    a.  The adult homeless would arrive at 7:00 p.m. for dinner, sleep and be provided clothes, hygiene kits and related health and human services at the Property.

    b.  The adult homeless would sleep on cots in the former classrooms during the evening times.

    c.  Project 10/20 volunteers alongside SMUUCh members would prepare and serve meals in the evening and morning, attend to the needs of the homeless, and monitor the property whereby the doors would be locked and the men and women would remain inside the Property.

    d.  The homeless would then leave at 7:00 a.m. the following morning for work (many work, but do not have a home to live in), or attend to appointments during the day.

    e.  No homeless individuals or support services would be on the Property between 7:00 a.m. and 7:00 p.m.

---

[1] See, ***Exhibit 5***, The Project 10/20 Policy and Procedure Manual for Housing the Homeless.

     f.   All individuals would be asked to hand over weapons and any illegal contraband. If any were turned in or found, they would be removed from the Property.

     g.   SMUUCh would comply with all health and safety rules as required by the City of Lenexa, the County of Johnson and the State of Kansas.

36.    After considering the proposal in light of SMUUCh's guiding principles of recognizing the "inherent worth and dignity of every person," and as the proposal to house the homeless is consistent with the ministry and core values of SMUUCh, the Board of Directors approved the request to house the homeless from December 1, 2019 through April 1, 2020 subject to the approval of the City Fire Marshal.

37.    On October 9, 2019, Rev. Rose Schwab and Jay Hetz, Church Sexton, met with Andrew "Butch" Diekemper, the City of Lenexa Fire Marshal, down the street at the fire house. The Fire Marshal was familiar with the building due to frequent visits when the Fire Department and Police Department used the building for training sessions.  The Fire Marshal approved the use subject to the Church installing fire alarms in the hallways next to rooms that were to be used for sleeping.

38.    Thereafter, Fire Marshal Diekemper assisted Rev. Rose Schwab with setting up meetings with the City Planning Department and Code Enforcement Department to discuss any other local approvals that may be required for the proposed use.

39.    On October 14, 2019, at 2:30 pm, Rev. Rose Schwab, Senior Pastor of SMUUCh; Jay Hetz, Church Sexton; Mike Monthey, Rental Committee; Matthew Clark, SMUUCh congregant and employee of Johnson County Mental Health; and Randy Burge, Church Treasurer; along with Barb McEver, Jim Schmidt, and Cathy Goodman from Project 10/20 and Valerie Carlson from Johnson United Community Services met with Andrew "Butch" Diekemper, City Fire Marshal; Magi Tilton, City Planning Director; Matt Souders, Community Development,

Building Code Division; and Dave Little and Dave Biles from the Fire Department at the Lenexa City Hall for one hour to discuss the proposal of SMUUCh housing up to forty homeless people from 7:00 p.m. to 7:00 a.m. at the Church from December 1, 2019 through April 1, 2020.

40.     The representatives from Project 10/20 told the representatives of the City how its program worked and what was required from the Church. Representatives from the City asked several questions concerning how the program is implemented and its impact on the surrounding area.

41.     At the conclusion of the meeting, Matt Souders from the Community Development, Building Code Division stated that he believed that the proposed use of the property met all of the City Building Code requirements and there would be no code issues with the proposal to house the homeless on a temporary basis from December through April.

42.     Thereafter, Magi Tilton, the City Planner, informed the group that she considered the Homeless Ministry an "accessory use" to the religious use of the property.

43.     On October 24, 2019, the Church received a letter from City Planning Director Magi Tilton advising it that the proposed use was not going to be approved as the use was "inconsistent" with the residentially zoned area. ***Exhibit 4.***

44.     Within minutes of receiving the letter, the Church received a telephone call from a news reporter, Jay Heck, asking for comment about the letter from the City.

45.     Thereafter, the Church contacted the City and requested a second meeting to discuss the letter and the sudden about-face with respect to the denial of the use.

46.     A second meeting occurred on November 5, 2019, at 4:00 p.m. at the Lenexa City Hall between Reverend Rose Schwab, Senior Pastor of SMUUCh; Gail Robertson, Board President; Nancy Mays, former Board President of the Church; Dale Trott, President-elect of the

Board; Barb McEver and Jim Schmidt from Project 10/20; and Beccy Yocham, City Manager; Magi Tilton, City Planning Director; and Sean McLaughlin, Assistant City Attorney for the City of Lenexa.

47.     During the course of the November 5, 2019 meeting, representatives from the Church and Project 10/20 inquired with the representatives of the City why they changed their position from the meeting of October 14, 2019.  City Manager Beccy Yocham spoke and acknowledged that serving the homeless was an issue, that the determination of whether serving the homeless is an accessory use under the zoning code is subjective, and that it was within her discretion to deny the Church the proposed accessory use as a "homeless shelter."

48.     When asked by a representative of the Church if the building could be used for emergency shelter for a tornado or other weather or civic events, City Manager Yocham agreed that it could be used for that situation. However, she insisted that the use of the property for a "homeless shelter" was not permitted.

49.     A representative of SMUUCh then attempted to negotiate with the City by reducing the number who would stay overnight inside the Church building.  The City Manager rejected every proposal from the Church and simply stated that the City would not allow the Church to be used for a homeless shelter.

50.     Yet as recently as October 28, 2019, City Manager Beccy Yocham confirmed that there is a homeless problem in Johnson County and was aware that a solution rested with the Church using its property for temporary housing. In an interview with the local paper, City Manager Beccy Yocham confirmed, *"I absolutely know there is a need*," for homeless shelters in Johnson County.  *Exhibit 3*.

51.     The decision of City Manager Beccy Yocham and City Planner Magi Tilton at the meeting of November 5, 2019 is a final decision of the City of Lenexa that the use of the Property as a homeless shelter is not a permitted use or conditional use under the zoning code, and therefore, no variance could be sought by SMUUCh. *Exhibit 4.*

52.     Likewise, the decision of the City of Lenexa, as outlined by Magi Tilton, Planning and Development Services Administrator, in her letter to SMUUCh dated October 23, 2019, is a final decision of the City of Lenexa. *Id.*

53.     Other than the Property, there is no other shelter and no other "Plan B," for homeless adults in Johnson County, Kansas.  The weather continues to freeze every night and nearly 200 people will needlessly suffer and likely be harmed by the illegal denial of the rights of SMUUCh to use its property to house the homeless. *Exhibit 6*, Kansas City Star article, Nov. 18, 2019.

54.     SMUUCh considers the use of its building for housing the homeless to be central to its sincerely held religious beliefs, and the City of Lenexa's denial of the use of the building as a temporary homeless shelter is, to SMUUCh, a substantial burden to its sincerely held religious beliefs.

55.     As a result of the City of Lenexa's denial of SMUUCh's request, the Church is effectively barred from using its Property for its religious ministry and has substantially burdened the religious exercise of the Church.

**COUNT I**

*Violation of the Religious Land Use and Institutionalized Persons Act*
*Substantial Burden Claim - 42 U.S.C. § 2000cc(a)*

56.     Plaintiff restates the allegations in paragraphs 1 through 55 as if fully rewritten

herein.

57.     Congress provided in Section 2(a)(1) of RLUIPA statutory protections for

"religious exercise" as follows:

> No government shall impose or implement a land use regulation in a manner that
> imposes a substantial burden on the religious exercise of a person, including a
> religious assembly or institution, unless the government demonstrates that
> imposition of the burden on that person, assembly, or institution * * * is in
> furtherance of a compelling government interest [and] is the least restrictive means
> of furthering that compelling government interest. 42 U.S.C. § 2000cc(a)(1).

58.     While Congress did not define the term "substantial burden" in RLUIPA, Congress

defined "religious exercise" to broadly include:

> any exercise of religion, whether or not compelled by, or central to, a system of
> religious belief," and specifies that the "use, building, or conversion of real property
> for the purpose of religious exercise shall be considered to be religious exercise of
> the person or entity that uses or intends to use the property for that purpose. 42
> U.S.C. § 2000cc-5(7).

59.     Congress further directed that RLUIPA should be "construed in favor of a broad

protection of religious exercise, to the maximum extent permitted by the terms of this chapter and

the Constitution." 42 U.S.C. § 2000cc-3(g).

60.     In addition, RLUIPA's drafters noted the need for religious institutions to have the

ability to develop "a physical space adequate to their needs and consistent with their theological

requirements," which is at the heart of RLUIPA's land use provisions. 146 CONG. REC. S7774-

01, 7774 (daily ed. July 27, 2000) (Joint Statement of Sen. Hatch and Sen Kennedy on the

Religious Land Use and Institutionalized Persons Act of 2000).

61.    The "substantial burden" provision of RLUIPA applies when (1) the burden is imposed in a program that receives federal financial assistance; (2) the imposition or removal of the burden affects interstate commerce; or (3) the burden is imposed in a system in which a government makes individualized assessments about how to apply a land use regulation. 42 U.S.C. § 2000cc(a)(2)(A), (B), and (C).

62.    Under the Tenth's Circuit's interpretation of RLUIPA, a government places a "substantial burden" on a religious institution when it denies that institution a reasonable opportunity to engage in religious activity. *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 660-61 (10th Cir. 2006).

63.    Whether a government has imposed a substantial burden or merely an inconvenience is a fact question that a jury must resolve. *Roman Catholic Archdiocese of Kansas City v. City of Mission Woods, Kansas*, 337 F. Supp. 3d 1122, 1134-1135 (D. Kan. 2018).

64.    The City, through the actions and decision of its Planning and Development Services Administrator and City Manager, applied its land use regulation to the Property. This resulted in an individual assessment of SMUUCh's proposed use of the Property for its sincerely held religious belief of housing the homeless as religious exercise.

65.    The City, through the decision to deny SMUUCh's request, substantially inhibits the Church's religious exercise by preventing the Church from having facilities that are adequate to meet its religious needs and follow the firmly-held beliefs of its members, and has thus imposed a "substantial burden" on the Church's religious exercise as set forth in 42 U.S.C. 2000cc(a)(1).

66.    The City, through the actions and decision to deny the Church's request, was not made in furtherance of a compelling governmental interest, nor is it the least restrictive means of furthering any compelling governmental interest.

67.     Accordingly, the City has imposed a "substantial burden" on SMUUCh's rights by denying it the ability to use the Property for religious assembly as recognized under 42 USC § 2000cc(a)(1).

68.     As a direct result of the Defendant's violations of SMUUCh's rights protected under 42 USC § 2000cc(a), the Church has suffered damages in excess of $75,000.00.

## COUNT II
### *Violation of the Kansas Preservation of Religious Freedom Act*
### *Kan. Stat. Ann. § 60-5303(a)*

69.     Plaintiff restates the allegations in paragraphs 1 through 68 as if fully rewritten herein.

70.     The Kansas Preservation of Religious Freedom Act ("KPRFA") prohibits a governmental entity from substantially burdening a person's right to exercise religion unless the government proves, by clear and convincing evidence, that its action furthers a compelling governmental interest and its action is the least restrictive way to accomplish that interest. Kan. Stat. Ann. § 60-5303(a).

71.     The Act is interpreted pursuant to the same standard of the substantial burden prong of RLUIPA.  See *Roman Catholic Archdiocese of Kansas City v. City of Mission Woods, Kansas*, 337 F. Supp. 3d 1122, 1134-1135 (D. Kan. 2018).

72.     The City, through the actions and decision of its Planning and Development Services Administrator and City Manager, applied its land use regulation to the Property. This resulted in an individual assessment of SMUUCh's proposed use of the Property for its sincerely held religious belief of housing the homeless as religious exercise.

73.     The City, through the decision to deny SMUUCh's request, substantially inhibits the Church's religious exercise by preventing the Church from having facilities that are adequate

17

to meet its religious needs and follow the firmly-held beliefs of its members, and has thus imposed a "substantial burden" on the Church's religious exercise as set forth in Kan. Stat. Ann. § 60-5303(a).

74.     The City, through the actions and decision to deny the Church's request, was not made in furtherance of a compelling governmental interest, nor is it the least restrictive means of furthering any compelling governmental interest.

75.     Accordingly, the City has imposed a "substantial burden" on SMUUCh's rights by denying it the ability to use the Property for religious assembly as recognized under Kan. Stat. Ann. § 60-5303(a).

76.     As a direct result of the Defendant's violations of SMUUCh's rights protected under Kan. Stat. Ann. § 60-5303(a), the Church has suffered damages in excess of $75,000.00.

## COUNT III
### *Violation of the Religious Land Use and Institutionalized Persons Act*
### *Equal Terms Claim - 42 U.S.C. § 2000cc(b)(1)*
### *Facial and As Applied Challenge*

77.     Plaintiff restates the allegations in paragraphs 1 through 76 as if fully rewritten herein.

78.     The Equal Terms provision of RLUIPA states: "No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." 42 U.S.C. § 2000cc(b)(1).

79.     In order to establish a facial violation of RLUIPA's Equal Terms Clause, which examines the language of the zoning ordinance itself, a Plaintiff must demonstrate that "(1) it is a religious assembly or institution, (2) subject to a land use regulation, which regulation (3) treats the religious assembly on less than equal terms with (4) a nonreligious assembly or institution (5) that causes no lesser harm to the interests the regulation seeks to advance." *Roman Catholic*

*Archdiocese of Kansas City v. City of Mission Woods, Kansas*, 337 F. Supp. 3d 1122, 1134-1135 (D. Kan. 2018).

80.     Plaintiff SMUUCh is a religious assembly or institution and has been, and continues to be, subject to Defendant's land use regulation—the City of Lenexa Zoning Code.

81.     Accordingly, the first two prongs of the Equal Terms provision of RLUIPA have been met.

82.     The City Zoning Code does not permit Homeless Shelters to operate as Principal Permitted Uses in *any* of the City's 22 zoning districts. *See generally **Exhibit 2,*** Selected Portions of the City Zoning Code, Schedules of District Regulations.

83.     The City Zoning Code does not permit Homeless Shelters to operate as Conditional Uses in *any* of the City's 22 zoning districts. *Id.*

84.     More specifically, the City Zoning Code facially treats religious assemblies and institutions on less than equal terms with nonreligious assemblies and institutions. The purpose of the City's Zoning Ordinance is not permitting, or conditionally permitting, homeless shelters is to exclude any property, and more particularly, Churches and other Houses of Worship from hosting the homeless as part of their religious mission and activities.

85.     The permitted nonreligious assemblies and institutions, such as emergency shelters for tornados or other weather related events and civic uses do not cause less harm to the interests the City Zoning Code seeks to advance than Houses of Worship.

86.     Therefore, the City Zoning Code facially violates RLUIPA's Equal Terms provision in the above-cited zoning districts in that it permits multiple nonreligious assemblies as Principal Permitted Uses but only allows Houses of Worship if they first apply for and obtain Conditional Use approval from the City.

87.     Plaintiff SMUUCh is suffering irreparable harm for which there is no adequate remedy at law and as a direct result of the Defendant's violations of Plaintiff's rights under RLUIPA's Equal Terms Clause, 42 U.S.C. § 2000cc(b)(1), as alleged above.

88.     Furthermore, as a direct result of the City's violations of Plaintiff SMUUCh's rights under RLUIPA's Equal Terms provision as alleged above, Plaintiff has suffered and is entitled to recover damages, equitable relief, costs and attorney fees.

## COUNT IV
### *Violation of the Religious Land Use and Institutionalized Persons Act*
### *Exclusions and Unreasonable Limitations Provisions - 42 U.S.C. § 2000cc(B)(3)(a) and (b)*

89.     Plaintiff restates the allegations in paragraphs 1 through 88 as if fully restated herein.

90.     Congress provided in Section (b)(3)(B) of RLUIPA statutory protections against "unreasonable limitations" as follows:

> *No government shall impose or implement a land use regulation that:*
>
> > *(A) Totally excludes religious assemblies from its jurisdiction; or*
> >
> > *(B) Unreasonably limits religious assemblies, institutions, or structures within a jurisdiction.*

91.     Congress also directed that RLUIPA should be "construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution." 42 U.S.C. § 2000cc-3(g).

92.     The Unreasonable Limitations provision does not focus on the treatment of a particular landowner but on a municipality's treatment of religious entities in general.

93.     The legislative history of this provision of RLUIPA evidences that "'[w]hat is reasonable must be determined in light of all the facts, including the actual availability of land and

the economics of religious organizations.'" 146 Cong. Rec. E1563 (daily ed. Sept. 22, 2000) (statement of Rep. Canady).

94.     In determining reasonableness, the Court must evaluate whether the number of sites available under the zoning scheme provides a reasonable opportunity for religious expression.

95.     Further, a Court must perform a sensitive inquiry into such circumstantial and direct evidence of intent as may be available; relevant evidentiary factors include substantial disparate impact, a history of discriminatory official actions, procedural and substantive departures from the norms generally followed by the decision maker, and the legislative and administrative history of the decision.

96.     The City does not allow homeless shelters as of right in any of its 22 zoning districts. *See Exhibit 2.*

97.     Thus, there is no possible way for any entity, and any Church or House of Worship that seeks to use its property for homeless ministries to operate in the City.

98.     Given that the City totally excludes religious based homeless shelters from its jurisdiction, the City has violated RLUIPA's Total Exclusions provision. *See* 42 U.S.C. § 2000cc(B)(3)(a).

99.     Further, given that the City Zoning Code does not allow homeless ministries as a Principal, Permitted, or Conditional Use, in any of the 22 zoning districts, the City has violated RLUIPA's Unreasonable Limitations provision. *See* 42 U.S.C. § 2000cc(B)(3)(b).

100.    The purpose of the City Zoning Code to exclude homeless shelters and preclude Churches and Houses of Worship to host homeless ministries is to preclude religious assemblies from using their property and furthering their sincerely held religious beliefs.

101.    The permitted nonreligious assemblies and institutions listed above do not cause less harm to the interests the City Zoning Ordinance seeks to advance than Houses of Worship.

102.    Defendant's actions have directly resulted in SMUUCh suffering irreparable harm for which there is no adequate remedy at law.

103.    Furthermore, as a direct result of Defendants' violations of Plaintiff's rights under 42 U.S.C. § 2000cc(b)(3), as alleged above, Plaintiff has suffered and is entitled to recover damages, equitable relief, costs and attorney fees.

### COUNT V
### *Violation of the United States Constitution*
### *Free Exercise Clause of the First Amendment (42 USC § 1983)*

104.    Plaintiff restates the allegations in paragraphs 1 through 103 as if fully rewritten herein.

105.    At all times alleged herein, Defendant has been and will continue to be acting under the color of state law and engaging in state action.

106.    The Free Exercise Clause of the First Amendment to the United States Constitution, as made applicable to the States via the Fourteenth Amendment, provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof…" U.S. CONST. amend. I.

107.    The Free Exercise Clause prohibits "religious gerrymanders" that exclude certain uses from an area based upon their religious nature. *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 534 (1993).

108.    The enactment and enforcement of the Zoning Ordinance by the City and its Planning & Developmental Services Administrator and City Manager constitutes governmental action.

22

109.    The Planning & Developmental Services Administrator and City Manager's decision to deny SMUUCh's request to use its property on a temporary basis for housing the homeless this winter severely restricts SMUUCh's ability to fully exercise its religious beliefs at the Property.

110.    The plain language of the City Zoning Code, as detailed above, makes it significantly more difficult for religious assembly uses to operate in the City than similarly situated secular assembly uses.

111.    The plain language of the City Zoning Code has imposed multiple restrictions that only apply to religious assembly uses but no other similarly situated secular assembly uses.

112.    The City Zoning Code is not neutral or of general applicability since it restricts homeless shelters from all 22 zoning districts, whereas secular assembly uses are considered Principal Permitted Uses in nearly every zoning district.

113.    The City Zoning Code's restrictions on homeless shelters, disallowing Churches and other Houses of Worship to use their property for a temporary homeless shelter, is not narrowly tailored to any compelling government interest.

114.    There are no homeless shelters in the City of Lenexa, Kansas.

115.    The purpose of the City Zoning Code regulating Churches and Houses of Worship is to exclude them from using their property for homeless shelters.

116.    The permitted nonreligious assemblies and institutions listed above do not cause less harm to the interests the City Zoning Code seeks to advance than Houses of Worship.

117.    In the alternative, the City Zoning Code's differential, more restrictive treatment of Houses of Worship than similarly situated secular assembly uses is not narrowly tailored to any

important government interest, and does not leave sufficient alternatives for religious expression in the City.

118.    Thus the City, through the plain language of the City Zoning Code and enforcement of the City Zoning Code, have created a religious gerrymander in the City where Churches and Houses of Worship are subject to much more severe restrictions than other similarly situated nonreligious assembly uses.

119.    Therefore, the City has violated the Free Exercise Clause of the First Amendment.

120.    SMUUCh is suffering and will continue to suffer irreparable harm for which there is no adequate remedy at law as a direct result of Defendant's violation of the Church's rights under the First Amendment Free Exercise Clause.

121.    Furthermore, as a direct result of Defendant's violation of Plaintiff's First Amendment free exercise rights, as alleged herein above, Plaintiff has suffered and is entitled to recover damages, equitable relief, costs and attorney fees.

## COUNT VI
### *Violation of Section Seven of the Kansas Constitution*
### *Right of Conscience*

122.    Plaintiff restates the allegations in paragraphs 1 through 121 as if fully rewritten herein.

123.    Section 7 of the of the Kansas Constitution's Bill of Rights states: "*The right to worship God according to the dictates of conscience shall never be infringed* . . . ." Kan. Const. Bill of Rights § 7.

124.    This protection includes the right to exercise one's religion freely, much like the protection recognized by the First Amendment to the Constitution of the United States. *State v. Smith*, 155 Kan. 588, 127 P.2d 518, 523 (Kan. 1942).

125.     Kansas state courts have held that § 7's protections are broader than those of the First Amendment to the federal Constitution. *Stinemetz v. Kan. Health Policy Auth.*, 45 Kan. App. 2d 818, 252 P.3d 141, 157 (Kan. Ct. App. 2011).

126.     For example, any law that burdens a religious practice—even if the law is facially neutral and generally applied—triggers strict scrutiny under § 7. *Id.* at 160.

127.     When analyzing a § 7 claim, Kansas courts use a four-part test. *Id.* The first two parts ask: "(1) whether [plaintiffs'] belief is sincerely held; [and] (2) whether the state action burdens the exercise of religious beliefs . . . ." *Id.* (internal quotation and citation omitted). Plaintiffs have the burden of proving both prongs. *Id.* If plaintiffs carry their burden to establish (1) and (2), the burden shifts to defendant to prove that "the state interest is overriding or compelling; and [if so] . . . the state uses the least restrictive means" to accomplish that interest. *Id.* (internal quotation and citation omitted). *Roman Catholic Archdiocese of Kansas City v. City of Mission Woods, Kansas*, 337 F. Supp. 3d 1122, 1134-1135 (D. Kan. 2018).

128.     SMUUCh has a sincerely held religious belief as one of its core principals to serve the homeless.

129.     The City of Lenexa has substantially burdened the religious beliefs of SMUUCh by denying it the ability to serve the homeless, one of its principal core beliefs.

130.     The City of Lenexa does not have an overriding or compelling reason to deny SMUUCh from using its Property to serve the homeless in Johnson County.

131.     The City of Lenexa did not use the least restrictive means in denying SMUUCh from using its Property to serve the homeless in Johnson County.

132.    Plaintiff SMUUCh is suffering irreparable harm for which there is no adequate remedy at law as a direct result of the City's violations of Plaintiff's rights under the Kansas Constitution as alleged above.

133.    Plaintiff SMUUCh is entitled to a declaratory judgment that the City's enactment and enforcement of City Zoning Code and its denial of the Church's request to use its Property for a homeless ministry violates Section 7 of the Bill of Rights of the Kansas Constitution.

134.    Plaintiff SMUUCh is further entitled to recover equitable relief, costs, and attorney fees from the City for the denial of its civil and constitutional rights.

**COUNT VII**
*Violation of the United States Constitution*
*Free Speech and Assembly Clause of the First Amendment*
*(42 U.S.C. § 1983)*

135.    Plaintiff restates the allegations in paragraphs 1 through 134 as if fully rewritten herein.

136.    The First Amendment to the U.S. Constitution prohibits government decision makers from "abridging the freedom of speech . . . or the right of the people to peaceably assemble."  U.S. CONST. amend. I.

137.    The First Amendment protects the right to "expressive association," or "the right to associate for the purpose of speaking."  *Rumsfeld v. Forum for Academic and Inst. Rights, Inc.,* 547 U.S. 47, 68 (2006).

138.    In circumstances in which religious and non-religious assembly uses are operationally similar (from the perspective of the proper purposes and objectives of government zoning authority), the City Zoning Code treats differently religious and non-religious assemblies on the basis of religious speech.

139.     The City Zoning Code, as implemented and applied by Defendant, differentiates religious assemblies and uses from similar secular assemblies and uses by means of analysis of the content of the speech of those who would use the property for assembling, and assigns discriminatory burdens to those users whose speech is religious.

140.     Defendant's discriminatory treatment of religious land uses, including that of the Plaintiff, constitutes a content-based and viewpoint-based restriction on speech.

141.     The content- and viewpoint-based restrictions of the City Zoning Code that are placed upon Plaintiff are not supported by a compelling governmental interest and are not narrowly tailored to accomplish a compelling governmental interest.

142.     The City Zoning Code drastically regulates and restricts Churches and Houses of Worship in the City, is not a legitimate time, place, or manner regulation because it does not serve a significant government interest, and does not leave open ample alternative channels for communication.

143.     The City Zoning Code, to the extent it only permits certain religious uses for Churches and Houses of Worship as Conditional Uses that have been pre-approved by the City, affords Defendant unfettered discretion to decide whether to allow religious speech, and does not contain in that process the procedural safeguards necessary for a speech-related permit scheme, constitutes a prior restraint on Plaintiff's speech in violation of the First Amendment to the United States Constitution.

144.     By discriminating against religious land uses, Defendant has violated and continues to violate Plaintiff's right to the Freedom of Speech under the First Amendment.

145.     In addition, the City Zoning Code, to the extent it imposes discriminatory burdens on those who seek to assemble in the City for religious exercise and speech, violates Plaintiff's

right to assemble and associate for the purpose of engaging in activities protected by the First Amendment.

146.    As a direct result of Defendant's violations of Plaintiff's rights under the First Amendment to the United States Constitution, as alleged above, Plaintiff has suffered and is entitled to recover damages, equitable relief, costs, and attorney fees.

<strong>Prayer for Relief</strong>

WHEREFORE, Plaintiff SMUUCh prays for a judgment against Defendant, and that this Honorable Court:

 a. Allow the Church to open its doors and use its Property for the homeless mission starting immediately;

 b. Adjudge, decree and declare the rights and other legal relations of the parties to the subject matter in controversy in order that such declaration shall have the force and effect of final judgment and that the Court retains jurisdiction of this matter for the purpose of enforcing the Court's Order;

 c. Award damages to the Church in excess of $75,000.00;

 d. Pursuant to 42 U.S.C. § 1988, 42 U.S.C. § 2000cc-4(d), and other applicable law, award the Church its reasonable attorney fees and costs; and

 e. Grant such other and further relief, as the Court deems equitable, just and proper.

<strong>Demand for Trial by Jury</strong>

Plaintiff herein demands a trial by jury in this cause of action.

Dated: November 22, 2019                    Respectfully Submitted,

**SHOOK, HARDY & BACON L.L.P.**

By: */s/ B. Trent Webb*
B. Trent Webb (D. Kan. No. 15965)
Beth Larigan (D. Kan. No. 20169)
2555 Grand Blvd.
Kansas City, MO 64108
Tel. (816) 421-6550
bwebb@shb.com
blarigan@shb.com

**Dalton & Tomich PLC**

By: */s/ Daniel P. Dalton*
Daniel P. Dalton (Michigan Bar No. 44056)
Alexander R. Reuter Michigan Bar No. 80654)
Lead Attorneys for Plaintiff
*Pro Hac Vice* admissions pending
The Chrysler House
719 Griswold Street, Suite 270
Detroit, MI 48226
Tel. (313) 869-6000
ddalton@daltontomich.com
areuter@daltontomich.com

*Attorneys for Plaintiff*
*SHAWNEE MISSION UNITARIAN*
*UNIVERSALIST CHURCH*

**Verification**

Pursuant to 28 U.S.C. §1746, I, Reverend Rose Schwab of Shawnee Mission Unitarian Universalist Church, declare under penalty of perjury, that I have personal knowledge of matters contained in paragraphs 1, 7 through 24, 26-30, 34 55 of this Complaint and that the allegations contained therein are true and accurate.

Executed this this 21st day of November, 2019.

By: Rev. Rose Schwab
Its: Senior Pastor